**SMILEY WANG-EKVALL, LLP**
Kyra E. Andrassy, State Bar No. 207959
kandrassy@swelawfirm.com
Timothy W. Evanston, State Bar No. 319342
tevanston@swelawfirm.com
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone: 714 445-1000
Facsimile:  714 445-1002

Counsel for Jeffrey Brandlin, Receiver

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JUSTIN ROBERT KING; AND ELEVATE INVESTMENTS LLC,<br><br>　　　　Defendants,<br><br>SHANNON LEIGH KING,<br><br>　　　　Relief Defendant. | Case No. SACV20-02398-JVS(DFMx)<br><br>**FIRST INTERIM APPLICATION FOR APPROVAL OF FEES AND COSTS OF:**<br><br>**(1) JEFFREY BRANDLIN AND BRANDLIN & ASSOCIATES, RECEIVER, AND**<br><br>**(2) SMILEY WANG-EKVALL, LLP, GENERAL COUNSEL TO THE RECEIVER**<br><br>DATE:　March 7, 2022[1]<br>TIME:　1:30 p.m.<br>CTRM:　10C<br>JUDGE:　James V. Selna |

**TO THE HONORABLE JAMES V. SELNA, UNITED STATES DISTRICT JUDGE, AND THE PARTIES TO THIS ACTION:**

　　　　Jeffrey Brandlin and Brandlin & Associates, the permanent receiver ("Receiver") appointed over Elevate Investments LLC and its subsidiaries

---

[1] At present, the Court is not conducting in-person hearings.  If appearances at the hearing are required, they are likely to be telephonic or video appearances only.

and affiliates ("Elevate") and Smiley Wang-Ekvall, LLP, general counsel to the Receiver (the "Firm"), submit their *First Interim Application for Approval of Fees and Costs of (1) Jeffrey Brandlin and Brandlin & Associates, Receiver, and (2) Smiley Wang-Ekvall, LLP, General Counsel to the Receiver* for the period of December 28, 2020, through October 31, 2021 (the "Application"), as required by the *Order Appointing Receiver* (the "Receiver Order"). Through the application, the Receiver is seeking approval of $70,837.50 in fees and $110.29 in expenses, and the Firm is seeking approval of $45,179.00 in fees and $3,600.50 in expenses. The Receiver and the Firm are requesting an order authorizing the Receiver to pay, on an interim basis, 80% of the fees and 100% of the expenses incurred. The Receiver and the Firm shared this Application with the Securities and Exchange Commission ("SEC") prior to its filing with the Court and are informed that the SEC has no objection to the relief sought.

## I.     BACKGROUND

The SEC commenced this civil enforcement action on December 28, 2020, seeking the appointment of a temporary receiver pending a hearing on a motion for a preliminary injunction. The Court appointed the Receiver as the temporary receiver on December 28, 2020, simultaneously issuing a temporary restraining order and an asset freeze order. The Receiver's appointment was made permanent by an order entered on January 19, 2021 (the "Receiver Order"). The Court approved the Receiver's retention of the Firm as his counsel and Brandlin & Associates as his forensic accountants by an order entered on February 16, 2021.

The Receiver and the Firm went to Elevate's office on December 28, 2020, in order to secure the books and records, preserve electronic data, and to meet with Elevate's principal, Justin King, and his wife. Concurrent

with gaining control of the business, the Receiver's team gave notice to the financial institutions holding accounts belonging to Elevate and the Kings of his appointment and the order freezing accounts. The Receiver also requested documents for those accounts in order to commence the forensic accounting process and to identify investors. After reviewing Elevate's investment account at Charles Schwab and understanding the nature of the investments held in that account, the Receiver instructed Charles Schwab to liquidate the investments and obtained turnover of the proceeds, which totaled $1,581,942. There are several additional accounts held by the Kings that remain frozen and that the Receiver intends to seek to bring into the receivership estate. The Receiver also sent an email to investors regarding the receivership, established a website to provide information with investors, and fielded inquiries from investors.

In the ensuing months, the Receiver focused on the forensic accounting so that he could quantify how much was raised from investors, how much was distributed to investors, how much was lost in the market, and how much was dissipated on personal expenses of the Kings. The Receiver is nearly complete with this analysis.

Based on the analysis to date, it appears that Elevate took in $8,298,985 from investors, distributed $409,525 to investors, lost $5,534,576 in the market, and dissipated approximately $2,312,678 of investor funds. These amounts remain subject to change because although the forensic accounting is nearing completion, it is not yet complete. The Receiver is using the information obtained to identify potential clawback actions, mostly against third parties who received payments from Elevate for personal expenses of the Kings. The Receiver also expects to file a motion with the Court in the near future to bring the accounts held in the name of either or both of the Kings into the receivership estate because investor

money went through them.  The Receiver is also preparing a motion for approval of a procedure for investors and creditors to file claims with the receivership estate.

As of October 31, 2021, and after paying ordinary costs of the receivership estate, the Receiver is holding $1,580,216.99 as reflected in the Standardized Fund Accounting Report attached as Exhibit 1.

### A.     Summary of Fees and Costs Sought by the Receiver

During the Application period and before providing a total net discount 17%, the Receiver incurred fees of $85,632.50 and costs of $110.29.  After application of the discount of 17%, the fees are $70,837.50 and it is the discounted amount for which the Receiver seeks allowance on an interim basis.  The Receiver seeks payment at this time of 80% of the allowed fees and 100% of the allowed costs and will seek payment of the 20% holdback at a later point in time.

| RECEIVER AND BRANDLIN & ASSOCIATES | | | |
|---|---|---|---|
| Category | Hours | Gross Amount | Discounted Amount |
| Administrative | 13.60 | $ 7,190.00 | $ 5,834.50 |
| Court Appearance | 6.95 | 4,517.50 | 3,614.00 |
| Onsite Fieldwork | 7.20 | 4,680.00 | 3,744.00 |
| Asset Analysis/Forensic Accounting | 144.30 | 58,415.00 | 48,606.00 |
| Investor Analysis/Claims | 27.80 | 10,570.00 | 8,831.00 |
| Taxes and Other | .40 | 208.00 | 208.00 |
| TOTAL | 200.25 | $85,632.50 | $70,837.50 |

### B.     Summary of Fees and Costs Sought by Smiley Wang-Ekvall, LLP

During the Application period and applying a 10% discount to its standard hourly rates, the Firm incurred fees of $45,179.00 and costs of $3,600.50.  The breakdown by category is as follows:

| SMILEY WANG-EKVALL, LLP | | |
|---|---|---|
| Category | Hours | Amount |
| Asset Analysis and Recovery | 72.30 | $ 28,507.10 |
| Case Administration | 22.60 | 9,974.10 |
| Litigation | 12.20 | 6,697.80 |
| Fee Applications | .30 | 0.00 |
| TOTAL | $ 107.40 | $45,179.00 |

The Firm is seeking allowance on an interim basis of $45,179.00 in fees and $3,600.50 in costs and payment of 80% of the allowed fees and 100% of the allowed costs from available funds. The Firm will seek payment of the 20% holdback at a later point in time.

II.     **SUMMARY OF TASKS PERFORMED AND COSTS INCURRED**

   A.     **Brandlin & Associates Categories and Description of Work**

   1.     **Administrative**

[$5,834.50 in discounted fees for 13.60 hours of work; blended hourly rate: $429.00]

The Receiver spent time in this category communicating with investors, reviewing the motion for an order in aid of administration of the receivership estate to retain professionals, and preparing the status report, and communicating with the SEC regarding routine matters.

   2.     **Court Appearance**

[$3,614.00 in discounted fees for 6.95 hours of work; blended hourly rate: $520.00]

Initially, the SEC sought the appointment of the Receiver on a temporary basis, pending a hearing on its motion for a preliminary injunction. The Receiver submitted an initial status report with preliminary findings and prepared for and attended the hearing on the motion for a preliminary injunction and to make the appointment of the Receiver permanent. The

Receiver also incurred time in this category communicating with investigators regarding his findings to date.

### 3. Onsite Fieldwork

[$3,744.00 in discounted fees for 7.20 hours of work; blended hourly rate: $520.00]

The Receiver incurred time in this category in connection with the takedown of Elevate's office the day that he was appointed as the temporary Receiver, reviewing the books and records, securing the electronic data, and communicating with the Kings.

### 4. Asset Analysis/Forensic Accounting

[$48,606.00 in discounted fees for 144.30 hours of work; blended hourly rate: $336.84]

Not surprisingly, the bulk of the Receiver's time in this Application was spent in connection with the forensic accounting. Elevate did not maintain an accounting system, so the Receiver reconstructed the books and records from bank and investment account records for nine bank accounts and seven brokerage accounts. This process is time-consuming, but ensures an accurate analysis. The Receiver then analyzed this data to determine the sources of cash, its uses, what the net investments held by investors is believed to be, and what potential additional sources of recovery there are. Because the scant books and records that Elevate did maintain were inaccurate, the Receiver also used these records to build a list of investors. The results of the time spent in this category will pave the way for identification of all assets and an ultimate distribution to investors and is one of the core functions of a receivership.

### 5. Investor Analysis/Claims

[$8,831.00 in discounted fees for 27.80 hours of work; blended hourly rate: $317.66]

Using the data gathered from the forensic accounting, the Receiver compiled a list of investors, the total amount of the investments they put in, identified distributions back to investors, and prepared a list of the net investments based on the books and records. The Receiver will use the results of this analysis to guide the claims procedure in this case.

### 6. Taxes and Other

[$208.00 in fees for .40 hours of work; blended hourly rate: $520.00]

The Receiver incurred a small amount of time in this category communicating with an accountant regarding Elevate's 2020 tax return.

### 7. Summary of the Receiver's Expenses Requested for Reimbursement

The Receiver requests that the Court approve reimbursement of $110.29 for mileage expenses.

The Receiver's invoice for the Application period is attached as Exhibit 2 and contains the information required by the SEC Receivership Billing Guidelines.

## B. Smiley Wang-Ekvall Categories and Description of Work

### 1. Asset Analysis and Recovery

[$28,507.10 in fees for 72.30 hours of work; blended hourly rate: $394.29]

During the Application Period, the bulk of the Firm's services were incurred in connection with asset analysis and recovery, which is to be expected in the beginning of a receivership case involving investment fraud.

In the first days of the case, the Firm assisted the Receiver with gaining control of Elevate's office, its books and records, and electronic data and access to accounts. The Firm also gave notice to financial institutions of the asset freeze and the appointment of the Receiver. The Receiver requested documents from the financial institutions so that the Receiver could perform his forensic accounting and assisted the Receiver with the

liquidation of the investments held in Elevate's account with Charles Schwab. Because Elevate did not maintain an accounting system and appeared to have conducted its business primarily through email, the Firm also reviewed the Elevate Gmail account for pertinent information, including investor information and potential assets. As bank records were produced, the Firm reviewed them to identify questionable transactions that required further information in order to validate the transactions. The Firm prepared subpoenas based on this review to a number of third parties, and this helped to identify potential litigation targets. The Firm also reviewed the records to identify other bank accounts for which documents needed to be obtained and issued subpoenas for those documents. The work that the Firm provided in this category helped to ensure the accuracy of the forensic accounting and will yield results once the Receiver seeks authority to pursue clawback actions.

### 2. Case Administration

[$9,974.10 in fees for 22.60 hours of work; blended hourly rate: $441.33]

The Firm incurred time in this category reviewing background information regarding Elevate's business and the claims being leveled against it, identifying potential professionals with information, communicating with investors, preparing the initial status report, redirecting Elevate's website to the receivership website, preparing a letter to investors to provide them with information about the receivership, returning the Elevate office to the landlord, preparing notices of receivership for other districts where the Receiver believed it might be possible assets were located in order to ensure jurisdiction over those assets, and obtaining approval for the retention of professionals, including the Firm, the firm that hosts the receivership website, and the computer forensic consultant.

The Firm has not charged the estate for routine actions, including routine communications with investors, redirection of mail, or communicating with the website host to keep the receivership website updated.

### 3. Litigation

[$6,697.80 in fees for 12.20 hours of work; blended hourly rate: $549.00]

Shortly after the Receiver was appointed, the Receiver learned from a few investors that Justin King was communicating with them and giving them inaccurate information about the receivership and Elevate's business. One investor was preparing to give Mr. King more money to invest. The Receiver informed the SEC of these communications, which appeared to violate the injunction issued by the Court. In addition, a law firm purporting to represent Elevate post-receivership filed an answer on Elevate's behalf without the Receiver's consent and was reluctant to withdraw it. The SEC prepared an application for an order to show cause why Mr. King should not be held in contempt for these issues, and the Firm incurred time preparing a declaration in support of that application regarding the communications with investors. The Court found Mr. King to be in contempt of its order and as a remedy for the misstatements, ordered that the Receiver post the pleadings explaining Mr. King's inaccuracies and a transcript of the contempt hearing on the receivership website so that investors had accurate information. The Court also ordered the law firm to withdraw Elevate's answer, which it did.

### 4. Fee Application

[$0.00 in fees for .30 hours of work; blended hourly rate: $0.00]

The Firm incurred a small amount of time beginning to prepare this fee application during the Application period, but does not charge the receivership estate for this work, as required by the SEC's Billing Guidelines.

## 5. Summary of Expenses Requested for Reimbursement

The Firm requests that the Court approve reimbursement of $3,600.50 in out-of-pocket costs. The itemization of the expenses is summarized below by category.

| | |
|---|---:|
| Attorney Service | $3,199.31 |
| Photocopies | 97.20 |
| Facsimile | 2.20 |
| Mailing/Postage | 136.54 |
| Filing Fees | 49.00 |
| Pacer Online Research | 102.33 |
| Travel/Lodging | 13.92 |
| TOTAL | $3,600.50 |

The bulk of the fees were incurred in connection with the recording of the Receiver Order in the districts where the Receivership Defendants own property, in connection with the expedited notice given to financial institutions about the appointment of the Receiver and the freeze of all assets, and the service of subpoenas for books and records.

The Firm's invoice for the First Application period is attached as Exhibit 3 and contains the information required by the SEC Receivership Billing Instructions.

## III. THE FEES AND COSTS ARE REASONABLE AND SHOULD BE ALLOWED

It is a general rule that the fees and expenses of a receivership are a charge against the property administered. *See Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994). These expenses include the fees and expenses of the Receiver and of his or her professionals. Decisions about the timing and amount of an award are committed to the sound discretion of the Court. *See SEC v. Elliot*, 953 F.2d 15690, 1577 (11th Cir. 1992).

In determining whether to allow fees, courts consider "the time, labor and skill required . . . in the proper performance of the duties imposed by the court upon the receivers, the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained." *Coskery v. Roberts & Mander Corp.*, 200 F.2d 150, 154 (3d Cir. 1952).  No single factor is dispositive and a reasonable fee is based on all of the circumstances of the receivership.

The services provided during the Application period will pave the way for the successful and efficient administration of this receivership estate.  The forensic accounting is nearly complete, and the Receiver has identified how much money was raised from investors, returned to investors, lost in the market, and dissipated on non-business expenses.  This work will enable to the Receiver to pursue additional recoveries for the estate and to eventually make a distribution to investors.  Both the Receiver and the Firm have endeavored to staff this case appropriately, utilizing staff with lower hourly rates as much as possible.  In addition, both the Receiver and the Firm have discounted their normal hourly rates—the Receiver by 15% and the Firm by 10%.

The Receiver and the Firm seek payment of 80% of the fees incurred on an interim basis in recognition of the reality that their work is continuing.  Payment of the holdback will be sought at the end of the case.

## IV. CONCLUSION

WHEREFORE, the Firm respectfully requests that this Court enter its order:

1. Allowing $70,837.50 in fees and $110.29 in expenses to the Receiver on an interim basis for the period of December 28, 2020, through October 31, 2021;

2. Allowing $45,179.00 in fees and $3,600.50 in expenses to the Firm on an interim basis for the period of December 28, 2020, through October 31, 2021;

3. Authorizing the Receiver to pay 80% of the allowed fees and 100% of the allowed expenses from available funds, with payment of the amount held back to be sought at a later date; and

4. For such further relief as the Court may deem necessary and appropriate.

DATED:  February 4, 2022        Respectfully submitted,

SMILEY WANG-EKVALL, LLP

By:    */s/ Kyra E. Andrassy*
         KYRA E. ANDRASSY
         Counsel for Jeffrey Brandlin,
         Permanent Receiver

# **DECLARATION OF JEFFREY BRANDLIN**

I, Jeffrey Brandlin, declare as follows:

1. I am the permanent receiver appointed by this Court over Elevate Investments, LLC, and its affiliates. I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of my first interim application for allowance and payment of fees (the "Application"). Unless otherwise defined in this declaration, all terms defined in the Application are incorporated herein by this reference.

2. Along with my counsel, I went to Elevate's office on December 28, 2020, the day of my appointment as the temporary receiver, in order to secure the books and records, preserve electronic data, and to meet with Elevate's principal, Justin King, and his wife. Concurrent with gaining control of the business, we gave notice to the financial institutions holding accounts belonging to Elevate and the Kings of my appointment and the order freezing accounts. We also requested documents for those accounts in order to commence the forensic accounting process and to identify investors. After reviewing Elevate's investment account at Charles Schwab and understanding the nature of the investments held in that account, I instructed Charles Schwab to liquidate the investments and obtained turnover of the proceeds, which totaled $1,581,942. There are several additional accounts held by the Kings that remain frozen and that I intend to seek to bring into the receivership estate in the near term.

3. Shortly after my appointment, I sent an email to investors regarding the receivership, established a website to provide information with investors, and fielded inquiries from investors.

4. In the ensuing months, my forensic accounting team and I focused on the forensic accounting so that I can quantify how much was raised from investors, how much was distributed to investors, how much was lost in the market, and how much was dissipated on personal expenses of the Kings. We are nearly complete with this analysis.

5. Based on the analysis to date, it appears that Elevate took in $8,298,985 from investors, distributed $409,525 to investors, lost $5,534,576 in the market, and dissipated approximately $2,354,884 of investor funds. These amounts remain subject to change because although the forensic accounting is nearing completion, it is not yet complete. We are using the information obtained to identify potential clawback actions, mostly against third parties who received payments from Elevate for personal expenses of the Kings. In the next quarter, I expect to seek approval of a procedure for investors and creditors to file claims with the receivership estate.

6. As of October 31, 2021, and after paying ordinary costs of the receivership estate, I am holding $1,580,216.99 as reflected in the Standardized Fund Accounting Report, which goes through October 31, 2021, a true and correct copy of which is attached as Exhibit 1.

7. In the ordinary course of its business, Brandlin keeps a record of all time expended by its professionals and para-professionals in the rendering of professional services on a computerized billing system as follows: At or near the time the professional services are rendered, attorneys and other professionals of Brandlin record (a) the description of the nature of the services performed, (b) the duration of the time expended, and (c) the client/matter name or number by either: (1) writing such information on a time sheet, or (2) inputting such information directly into the Firm's computer billing system. For the professionals who record their time

1  using written time sheets, the information contained in the time sheets is
2  then transcribed into Brandlin's computer billing system.  Brandlin's
3  computer billing system keeps a record of all time spent on a client/matter,
4  the professional providing the services and a description of the services
5  rendered.  Brandlin's computer billing system automatically multiplies the
6  time expended by each professional by the respective professional's billing
7  rate to calculate the amount of the fee.  Brandlin conducts its business in
8  reliance on the accuracy of such business records.

       8.    Attached as Exhibit 2 is a true and correct copy of the billing records for me and my forensic accounting team at Brandlin.  It is Brandlin's usual practice to allocate work and assignments in an efficient manner to achieve an effective result.  As demonstrated in the Application, the practice has been followed in this case.

       9.    At any time a reimbursable charge is incurred on behalf of a client, such as photocopy expenses, telecopy charges, and the like, employees of Brandlin keep a written record of the file number for which the charges were expended and a brief description of the nature of the expense.  These records are also transcribed into the computer which, together with the records of time spent providing professional services, are transcribed onto monthly bills.  The expenses are billed at Brandlin's actual cost.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      Executed on this 4th day of February, 2022, at Los Angeles, California.

_____
Jeffrey Brandlin

## DECLARATION OF KYRA E. ANDRASSY

I, Kyra E. Andrassy, declare as follows:

1. I am a partner with Smiley Wang-Ekvall, LLP (the "Firm"), counsel for Jeffrey Brandlin, the permanent receiver for Elevate Investments, LLC. I am licensed to practice before this Court and the courts of the State of California. I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of the first interim application of the Receiver and the Firm for allowance and payment of fees and costs (the "Application"). Unless otherwise defined in this declaration, all terms defined in the Application are incorporated herein by this reference.

2. In the ordinary course of its business, the Firm keeps a record of all time expended by its professionals and para-professionals in the rendering of professional services on a computerized billing system as follows: at or near the time the professional services are rendered, attorneys and other professionals of the Firm record (a) the description of the nature of the services performed, (b) the duration of the time expended, and (c) the client/matter name or number by either: (1) writing such information on a time sheet, or (2) inputting such information directly into the Firm's computer billing system. For the professionals who record their time using written time sheets, the information contained in the time sheets is then transcribed into the Firm's computer billing system. The Firm's computer billing system keeps a record of all time spent on a client/matter, the professional providing the services and a description of the services rendered. The Firm's computer billing system automatically multiplies the time expended by each professional by the respective professional's billing

rate to calculate the amount of the fee. The Firm conducts its business in reliance on the accuracy of such business records.

3. I have reviewed the Firm's bill for services rendered in connection with its representation of the Receiver in this case, a true and correct copy of which is attached hereto as Exhibit 3.

4. It is the Firm's usual practice to allocate work and assignments in an efficient manner to achieve an effective result. As I believe is demonstrated in the Application, the practice has been followed in this case.

5. At any time a reimbursable charge is incurred on behalf of a client, such as photocopy expenses, telecopy charges, and the like, employees of the Firm keep a written record of the file number for which the charges were expended and a brief description of the nature of the expense. These records are also transcribed into the computer which, together with the records of time spent providing professional services, are transcribed onto monthly bills. The expenses are billed at the Firm's actual cost.

6. The Firm has no fee sharing arrangement, understanding, or compensation sharing arrangement with any other entity, and no part of the attorneys' fees or expenses awarded to the Firm will be paid to any other entity.

7. I prepared the Application. To the best of my knowledge, information and belief, the facts set forth in the Application are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 4th day of February, at Costa Mesa, California.

*/s/ Kyra E. Andrassy*
Kyra E. Andrassy